UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| REASON FOUNDATION,<br><br>    Plaintiff,<br><br>    v.<br><br>FEDERAL BUREAU OF PRISONS, et al.,<br><br>    Defendants. | Civil Action No. 23-0440 (CRC) |

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
AND MEMORANDUM IN SUPPORT THEREOF**

**TABLE OF CONTENTS**

**BACKGROUND** ........................................................................................................................... 1

**LEGAL STANDARD** .................................................................................................................. 2

**ARGUMENT** ................................................................................................................................ 2

    I.    The Agency Applied the Deliberative Process Privilege Appropriately ............................. 2

    II.   The Agency Reasonably Segregated Nonexempt Information............................................ 5

**CONCLUSION** ............................................................................................................................. 9

The Federal Bureau of Prisons ("BOP" or "Agency")[1] files this motion for summary judgment under Federal Rule of Civil Procedure 56 and Local Civil Rule 7(h).

## BACKGROUND

This is a case brought under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, where Reason Foundation ("Plaintiff") seeks mortality reviews for two facilities. On May 4, 2020, Plaintiff submitted the following request:

> Pursuant to the Freedom of Information Act, I hereby request the following records:
>
> - any "mortality reviews" conducted regarding inmate deaths at FMC Carswell between Jan. 1, 2015 and May 4, 2020.
>
> - any "mortality reviews" conducted regarding inmate deaths at FCI Aliceville between Jan. 1, 2015 and May 4, 2020.

*See* FOIA Request, ECF No. 10-3 at 7.

The Agency produced documents pertaining to FMC Carswell on March 30, 2022, and FCI Aliceville on May 1, 2023. *See* Determination Letter (Mar. 30, 2022), ECF No. 10-3 at 10-12; Determination Letter (May 1, 2023), ECF No. 10-3 at 24-26. On September 29, 2023, after re-evaluating its prior production of records related to mortality reviews from FCI Aliceville, the Agency re-produced the records with less redactions under Exemptions 6 and 7(C). *See* Christenson Decl. ¶ 18, ECF No. 10-2. Currently, the only issues before the Court are (a) whether the Agency applied the deliberative process privilege appropriately and (b) whether the Agency segregated all reasonable segregable information from the withheld information. The parties have also agreed to a representative sample of four mortality reviews: (1) Rosemary Ofume and

---

[1] The Department of Justice, Office of Information Policy was also named as a defendant in this case; however, throughout this brief, the government will only refer to the Bureau of Prisons, as the records at issue pertain to that Agency. The Office of Information Policy simply handles appeals for all components of the Department of Justice, including the Bureau of Prisons. *See* 28 C.F.R. §§ 0.24(f), 16.8.

1

(2) Doris Nelson from the FCI Aliceville records, and (3) Andrea Circle-Bear and (4) Sherry Salas from the FMC Carswell records. *Id.* ¶ 19.

## LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine if a reasonable factfinder could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material if it might affect the outcome of the suit under the governing law. *Id.* Although all inferences are taken in a light most favorable to the nonmoving party, a party opposing summary judgment may not rest on allegations or denials from its pleadings but "must set forth specific facts showing that there is a genuine issue." *Id.* at 255-56. In a FOIA case, summary judgment may be granted "on the basis of agency affidavits if they contain reasonable specificity of detail rather than merely conclusory statements, and if they are not called into question by contradictory evidence in the record or by evidence of agency bad faith." *Evans v. Fed. Bureau of Prisons*, 951 F.3d 578, 584 (D.C. Cir. 2020) (citation omitted).

## ARGUMENT

**I.      The Agency Applied the Deliberative Process Privilege Appropriately**

Exemption 5 shields from disclosure "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). "The exemption incorporates the deliberative process privilege, which protects 'documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which government decisions and policies are formulated.'" *Waterman v. IRS*, 61 F.4th 152, 156 (D.C. Cir. 2023) (quoting *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 150 (1975)) "To properly invoke Exemption 5, an agency must show that withheld

2

documents are 'both predecisional and deliberative.'" *Id.* (quoting *Fish & Wildlife Serv. v. Sierra Club, Inc.*, 592 U.S. 261, 273 (2021)). A document is predecisional if it was "generated before the agency's final decision on the matter" and deliberative if it was "prepared to help the agency formulate its position." *Sierra Club*, 592 U.S. at 268.

The "ultimate purpose" of the deliberative process privilege is "to prevent injury to the quality of agency decisions." *Waterman*, 61 F.4th at 157 (quoting *Sears*, 421 U.S. at 151). It reflects the view that if agencies were "to operate in a fishbowl, the frank exchange of ideas and opinions would cease and the quality of administrative decisions would consequently suffer." *Id.* (quoting *Dudman Commc'ns Corp. v. Dep't of Air Force*, 815 F.2d 1565, 1567 (D.C. Cir. 1987). The privilege also serves "to protect against confusing the issues and misleading the public by dissemination of documents suggesting reasons and rationales for a course of action which were not in fact the ultimate reasons for the agency's action." *Id.* (quoting *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980)).

Lastly, once an agency demonstrates that the deliberative process applies, it must also show foreseeable harm. 5 U.S.C. § 552(a)(8)(A)(i)(I). "In the context of withholdings made under the deliberative process privilege, the foreseeability requirement means that agencies must concretely explain how disclosure 'would'—not 'could'—adversely impair internal deliberations." *Reps. Comm. for Freedom of the Press v. FBI*, 3 F.4th 350, 369-70 (D.C. Cir. 2021). The agency must provide "a focused and concrete demonstration of why disclosure of the particular type of material at issue will, in the specific context of the agency action at issue, actually impede those same agency deliberations going forward." *Id.* at 370.

Here, there is no genuine dispute that the withheld portions of the mortality reviews at issue fall under the deliberative process privilege. First, it was readily apparent that the reviews were

3

"inter-agency or intra-agency" records because "they were created by BOP personnel after the deaths of inmates at FMC Carswell and FCI Aliceville." Christenson Decl. ¶ 22.

Second, the reviews are both predecisional and deliberative. As described in the Christenson declaration, a mortality review "is the process BOP utilizes to establish a multilevel system of reporting and reviewing of every inmate death, whether by natural cause, suicide, homicide, or accident." Christenson Decl. ¶ 23. "BOP medical staff and other BOP disciplinary experts review the circumstances of each individual death to evaluate the agency's health care delivery system and policies, to identify its significant strengths and weaknesses, and to take corrective action where necessary." *Id.* Thus, the reviews are predecisional because they precede any decision that may or may not be made about changes at the facilities to try to prevent similar deaths in the future. They are also deliberative because they reflect a give and take between the staff and experts about the circumstances surrounding each person's death to come up with the most appropriate corrective action, if any. Both the predecisional and deliberative elements, therefore, are easily met here.

Finally, the Christenson declaration establishes foreseeable harm in a focused and concrete way. The Agency determined if the redacted portions of the reviews were produced to the public, it would "have a chilling effect on future communications of BOP staff performing mortality reviews as they would, at the very least, be less candid in their evaluations out of concern their opinions and analyses would be revealed to the public." Christenson Decl. ¶ 24. "At its worst, if the opinions and evaluations were disclosed to the public, vigorous evaluations of BOP health care would cease rendering this vital process virtually useless." *Id.* "BOP would not be able to identify strengths or weaknesses honestly and effectively and would not be able to improve its health care delivery system and policies, or take corrective action as needed, effectively." *Id.*

4

In other words, if Agency personnel are not able to freely exchange ideas about the circumstances surrounding an inmate's death, the Agency will not be able to make informed decisions and meaningful changes to try to prevent similar deaths in the future. The safety of the inmates would be at jeopardy, and the effectiveness of the Agency's procedures would suffer. This explanation satisfies the foreseeable harm requirement.

For the reasons above, the Agency has asserted the deliberative process privilege appropriately.

**II.     The Agency Reasonably Segregated Nonexempt Information**

"An agency shall . . . consider whether partial disclosure of information is possible whenever the agency determines that a full disclosure of a requested record is not possible; and take reasonable steps necessary to segregate and release nonexempt information." 5 U.S.C. § 552(a)(8)(A)(ii). "Any reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt." 5 U.S.C. § 552(b). Non-exempt portions of a document must be disclosed unless they are "inextricably intertwined" with exempt portions. *Sussman v. Marshals Serv.*, 494 F.3d 1106, 1116 (D.C. Cir. 2007) (quoting *Mead Data Cent., Inc. v. Dep't of Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977)).

Under the deliberative process privilege, purely factual material usually cannot be withheld "unless it reflects an exercise of discretion and judgment calls." *Waterman*, 61 F.4th at 158 (quoting *Ancient Coin Collectors Guild v. Dep't of State*, 641 F.3d 504, 513 (D.C. Cir. 2011)). However, "the fact-opinion line 'must not be applied mechanically'" because "the privilege serves to protect the deliberative process itself, not merely documents containing deliberative material." *Mapother v. Dep't of Just.*, 3 F.3d 1533, 1537 (D.C. Cir. 1993). This Circuit has consistently held "that the deliberative process privilege protects documents reflecting agency officials' selection and organization of facts to help the agency formulate its position." *Waterman*, 61 F.4th at 159.

5

Agencies, further, are entitled to a presumption that they complied with the obligation to disclose reasonably segregable material. *Lewis v. Dep't of Treasury*, 851 F. App'x 214, 217 (D.C. Cir. 2021); *Sussman*, 494 F.3d at 1117.

Here, there is no genuine dispute that any factual information in the withheld portions of the records are inextricably intertwined with exempt portions such that the factual information cannot be disclosed without revealing the deliberative process. The Christenson declaration, which is afforded a presumption of compliance with the segregability requirement, attests that she "personally reviewed the releases in this matter, including the documents partially released, and [has] determined that no documents contain releasable information which could be reasonably segregated from the non-segregable portions." Christenson Decl. ¶ 25. She explains how the deliberative process privilege protects not just "opinions, advice, evaluations, deliberations, proposals, or recommendations that form part of an agency decision-making process," but the process also protects "the selection and sorting of factual information relied upon as part of the decision-making process." Christenson Decl. ¶ 21.

In this case, the Agency reviewed "the circumstances of each individual death" to form opinions and recommendations about how to prevent similar deaths at its facilities in the future. Christenson Decl. ¶ 23. The factual information relied upon by the Agency to form its opinions cannot be reasonably segregated because revealing the factual information the Agency relied on would reveal the thought process of selecting and sorting which information the Agency believed to be most relevant in forming its opinions and recommendations. Thus, by revealing the factual information relied upon by the Agency to form its opinions and recommendations, the Agency would be revealing a deliberative process. As such, the factual information cannot be reasonably segregated from the withheld portions of the records at issue.

6

For example, the mortality review of Andrea Circle-Bear indicates that she passed away from COVID-19 in 2020. *See* Circle-Bear Mortality Review, ECF No. 10-6 at 1. The narrative summary of her review provides several facts about her medical history before she passed away. She was pregnant and had five cesarians. *Id.* There was no significant medical history to report during the mortality review. *Id.* On March 28, 2020, she was transferred to a hospital and then discharged back to FMC Carswell the same day after complaining of a fever, headache, chills, sweating, and abdominal cramping. *Id.* A few days later, she was transferred back to a hospital, and on April 1, 2020, she was intubated, placed on a ventilator, and underwent an emergency C-section. Later, on April 6, 2020, her test results came back positive for COVID-19, and she passed away on April 28, 2020. *Id.* at 2.

Further down in the mortality review, the committee evaluates the strengths and weaknesses of Agency personnel responding to Circle-Bear's circumstances. *Id.* at 6. The opinions and conclusions drawn by the committee about the Agency's strengths and weaknesses may refer to facts from Circle-Bear's medical history described above to support the opinions and conclusions. For example, the fact that Circle-Bear had no significant medical history may or may not appear in the strengths and weaknesses section of the review. If the fact is included, a person will naturally infer that the fact was material, or at least relevant, to the Agency in evaluating its response to Circle-Bear's circumstances. If the fact does not appear in the strengths and weaknesses section of the review, a person will naturally infer that the Agency did not find the fact material or relevant. The presence or absence—or in other words, the selection and sorting—of facts included in any analysis of the Agency's response to Circle-Bear's circumstances would reveal which facts the Agency found most material or relevant and which it did not. It would thus reveal a deliberative process and cannot be reasonably segregated from the other withheld material.

Certainly, because Plaintiff has the facts, which were disclosed in the narrative summary sections of each mortality review, Plaintiff can examine them and formulate its own opinions or conclusions about the Agency's response to Circle-Bear's circumstances, or the other inmates for which mortality reviews were provided. Plaintiff likely even has its own opinion about which facts are most material or relevant, and which are not. But to protect the thought process of Agency decision makers when evaluating the circumstances surrounding the death of an inmate, the facts relied upon in formulating opinions and recommendations in any analysis section of a mortality review cannot be disclosed. They are inextricably intertwined with the opinions and recommendations themselves. *Cf. Elec. Frontier Found. v. Dep't of Just.*, 739 F.3d 1, 12-13 (D.C. Cir. 2014) (finding government correctly withheld whole document under deliberative process privilege because under the context disclosing facts would disclose deliberative process); *see also Wolfe v. Dep't of Health & Hum. Servs.*, 839 F.2d 768, 774 (D.C. Cir. 1988) ("In some circumstances, even material that could be characterized as 'factual' would so expose the deliberative process that it must be covered by the privilege.").

For the reasons above, the Agency complied with the obligation to reasonably segregate nonexempt information.

\*   \*   \*

## CONCLUSION

For the reasons above, the Court should grant the Agency's motion for summary judgment.

Date: January 24, 2024
Washington, DC

Respectfully submitted,

MATTHEW M. GRAVES, D.C. Bar # 481052
United States Attorney

BRIAN P. HUDAK,
Chief, Civil Division

By:   */s/ Sam Escher*
SAM ESCHER, D.C. Bar # 1655538
Assistant United States Attorney
601 D Street, N.W.
Washington, D.C. 20530
(202) 252-2531
Sam.Escher@usdoj.gov

*Attorneys for the United States of America*