# United States District Court
# for the District of Columbia

| | |
|---|---|
| **Reason Foundation**, | |
| *Plaintiff*, | Civil Action No. 23-cv-0440 (CRC) |
| v. | |
| **Federal Bureau of Prisons, et al.**, | |
| *Defendants*. | |

## Plaintiff Reason Foundation's Opposition to Defendants' Motion for Summary Judgment and Cross-Motion for Summary Judgment

Reason Foundation, the publisher of *Reason* magazine, has sought Mortality Reviews for women who died over a period of five years at two federal prisons. Defendants have produced the Reviews, with significant redactions purportedly justified by FOIA's exemption for materials that are part of an agency's deliberative processes. Reason challenges the propriety of those redactions.

1

## Factual and Procedural History

The factual background is largely as Defendants have described it. The Plaintiff requested Mortality Reviews from the Federal Medical Center Carswell and the Federal Correctional Institution Aliceville for the period from January 1, 2015 to May 4, 2020. *See* Defs.' Mot. for Summary Judgment, 1 [ECF 10].[1] The Defendants produced redacted records related to FMC Carswell on March 30, 2022. *Id.* After Plaintiff filed suit on February 16, 2023 [ECF 1], the Defendants produced the redacted records from FCI Aliceville on May 1, 2023. Defs' Mot 1.

To simplify the Court's review, the parties have agreed to a representative sample of four Mortality Reviews with redactions under b(5). *Id.* This is a case particularly suited to exemplars, as all the records in question are in same format, required by federal policy to be completed in a standard manner.

When a person dies in custody of the Bureau of Prisons (unless death was by legal execution), BOP policy requires that staff complete a Mortality Review within 30 days. BOP Program Statement 6013.01, § 11(c) (2005), https://www.bop.gov/policy/progstat/6013_001.pdf. These Mortality Reviews must contain at least the following factual summaries:

- A clinical summary of the case, including history, diagnosis, treatment plan, sequence of events leading to death, and the cause of death;

---

[1] The Defendants' motion has page numbers in the bottom margin that, because of the cover page and table of contents, differ from the ECF assigned page numbers. This brief will refer to the page numbers at the bottom of the pages.

- A summary of activities by institution or community staff regarding the response to the death;
- Any autopsy or toxicology reports;
- If the deceased was admitted to a community hospital, the attending physician's report; and
- Any pertinent psychology services records.

*Id.*

The main facts are reported on a standard form, available at https://www.bop.gov/policy/forms/BP_A0563.pdf; see also Defs' Mot. Attachment 8 [ECF 10-8]. This form largely consists of yes / no /not applicable checkboxes, with spaces for narrative as necessary.

## Legal Standards

"FOIA cases typically and appropriately are decided on motions for summary judgment." *Defs. of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 87 (D.D.C. 2009). A grant of summary judgment is appropriate when the pleadings and evidence demonstrate "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Unlike a normal plaintiff's summary judgment motion, in FOIA it is an agency's burden to prove that it has complied with its obligations under FOIA. *See U.S. DOJ v. Tax*

3

*Analysts*, 492 U.S. 136, 142 n.3 (1989). To prevail, the agency must meet its burden of proving that "each document that falls within the class requested either has been produced, is unidentifiable, or is wholly exempt from the Act's inspection requirements." *Nat'l Cable Television Ass'n v. Fed. Commc'ns Com.*, 479 F.2d 183, 186 (D.C. Cir. 1973).

To determine whether an agency has carried its burden, a court may rely on agency affidavits and declarations that demonstrate the applicability of any claimed exemptions. *See Morley v. CIA*, 508 F.3d 1108, 1116 (D.C. Cir. 2007). "At all times courts must bear in mind that FOIA mandates a 'strong presumption in favor of disclosure.'" *Nat'l Ass'n of Home Builders v. Norton*, 309 F.3d 26, 32 (D.C. Cir. 2002) (quoting *U.S. Dep't of State v. Ray*, 502 U.S. 164, 173 (1991)).

**Argument**

I. **The redacted information is not shielded from release under FOIA by the deliberative process privilege.**

FOIA exempts from mandatory disclosure "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). It "incorporates the privileges that the Government may claim when litigating against a private party." *Abtew v. U.S. Dep't of Homeland Sec.*, 808 F.3d 895, 898 (D.C. Cir. 2015). One of those privileges is the deliberative process privilege. *Id.* This privilege helps preserve the "open and frank discussion" necessary for governmental decision-making. *Id.*

4

at 9. It protects "documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *NLRB v. Sears, Roebuck & Co., 42*1 U.S. 132, 150 (1975) (cleaned up). It does not protect any included factual information. *EPA v. Mink*, 410 U.S. 73, 87-88 (1973) ("memoranda consisting only of compiled factual material or purely factual material contained in deliberative memoranda and severable from its context would generally be available for discovery by private parties in litigation with the Government").

To qualify for of Exemption 5's protection for deliberative process privileged documents, records must be "both pre-decisional and deliberative" *Abtew*, 808 F.3d at 899. "A document is predecisional if it precedes, in temporal sequence, the decision to which it relates." *Id.* (cleaned up). And it "is deliberative when it is prepared to help the agency formulate its position, and it reflects the give-and-take of the consultative process." *Reporters Comm. for Freedom of the Press v. FBI*, 3 F.4th 350, 362 (D.C. Cir. 2021) (cleaned up).

In 2016, Congress added the requirement that to withhold a record under this or any other FOIA exemption, the Government must meet the so-called foreseeable harm requirement, which "imposes an independent and meaningful burden on agencies." *Id.* at 369. That burden requires the Government to demonstrate the "basis and likelihood" of any purported harms that might come from release. *Id.* The Government "cannot rely on mere speculative or abstract fears, or fear of embarrassment." *Id.* (cleaned up). The foreseen harms must be more than "generalized assertions." *Id.* (cleaned up). To withhold records under Exemption 5, the Government must explain "how disclosure would—not could—adversely impair internal deliberations." *Id.* at 369-

5

70 (cleaned up). "A perfunctory statement that disclosure of all the withheld information—regardless of category or substance—would jeopardize the free exchange of information between senior leaders within and outside of the agency will not suffice." *Id*. at 370 (cleaned up). This is especially true when the records requested are ones the Government is "obligated by law to provide." *Id.* at 371.

Ordering the release of these Mortality Reviews would treat the BOP no differently than private prison medical providers are treated in federal civil litigation. *See, e.g.,* A*gster v. Maricopa Cnty.,* 422 F.3d 836, 839 (9th Cir. 2005) (ordering discovery of Correctional Health Services' Mortality Review); *McNamara v. City of Phila.*, No. 20-4570, 2022 U.S. Dist. LEXIS 115630, at *5 (E.D. Pa. June 30, 2022) (ordering discovery of Corizon Mortality Review); *Avila v. Mohave Cnty.*, No. 3:14-cv-8124-HRH, 2015 U.S. Dist. LEXIS 148956, at *14-15 (D. Ariz. Oct. 30, 2015) (same, and allowing deposition of corporate representative most knowledgeable about them). That parity is the crux of FOIA Exemption 5.

\* \*

Turning to the Mortality Reviews at issue, Plaintiff agrees with the Defendants that they are obviously inter-agency records. *See* Defs' Mot. At 4. But the redacted portions are neither predecisional nor deliberative. And even if they were, the BOP has not sufficiently described any foreseeable harm that would come from release of the redacted portions of the Mortality Reviews.

6

A. **Mortality Reviews do not precede an agency decision.**

Generally, Mortality Reviews are not used in BOP decision making, and are thus not predecisional. "To ascertain whether the documents at issue are pre-decisional, the court must first be able to pinpoint an agency decision or policy to which these documents contributed." *Morley*, 508 F.3d at 1127.

Mortality Reviews are not examined by the BOP command structure. See Office of the Inspector General, Department of Justice, *Evaluation of Issues Surrounding Inmate Deaths in Federal Bureau of Prisons Institutions*, 24-041. P. 50 (Feb. 2024), https://oig.justice.gov/sites/default/files/reports/24-041.pdf. Only if these Mortality Reviews also come with a separate document, a predecisional Root Cause Analysis, do they form part of a BOP decision-making process. *Id.* Root Cause Analyses are separate procedures, completed on separate forms. See *BOP* Program Statement 6013.01, § 9.

Some of the redacted information is not even about BOP activities—the Mortality Reviews go over the care provided at local hospitals, over which the BOP has no control. This section is found generally on page 4 of the form. [ECF 10-8]. There is no BOP decision to be made about the course of outside hospital care.

For example, take Ms. Rosemary Ofume's Mortality Report. [ECF 10-4]. The BOP released the Summary Review without redactions. *Id.* at 5. From that review, we learn that on March 21, 2018, at 8:08 am, an officer reported that Ms. Ofume was complaining of abdominal pain and a bloody nose. *Id.* A medical emergency was called, and CPR began at 8:14 am. *Id.* At 8:19 am, a

7

call was made for an ambulance, but Ms. Ofume went into cardiac arrest at 8:40 am. *Id*. She was pronounced dead at 9:36 am in the local hospital. *Id*.

Even given that course of events, under the section labeled "Local Community Hospitalizations Only," check boxes relating only to hospital care are redacted. *Id*. at 4. The redacted answers are to the questions, "Were diagnostic procedures appropriate and timely," "Was treatment appropriate to diagnosis and instituted timely" "Was treatment appropriate to complication," and "Appropriate pre-operative evaluation completed, including lab, physical exam, updated history." These are evaluations of the hospital care and prompt no conceivable BOP decision. There is no conceivable (within the bounds of the Constitution) world in which the BOP stops calling an ambulance for people who have heart attacks, even if the care that was outside the BOP's control were substandard.

Those same check boxes are redacted on the Mortality Reviews for Ms. Doris Nelson [ECF 10-5, p.4], Ms. Andrea Circle-Bear [ECF 10-6, p. 3], and Ms. Sherry Salas [ECF 10-7, p.5]. None of this involves care over which the BOP has any control or any decision to make.

Thus, neither the whole of the reports, nor specifically sections within them can be said to precede any BOP decision. When, as here, there is no decision or policy to which the Government can point, the deliberative privilege does not apply. With no applicable privilege, Exemption 5 does not apply, and the records must be released.

**B. The redacted information in the Mortality Reviews is not deliberative—it is factual.**

Furthermore, even if parts of the Mortality Reviews were predecisional, the redacted information is factual, not deliberative. "Agencies must disclose those portions of predecisional and deliberative documents that contain factual information that does not inevitably reveal the government's deliberations." *Reporters Comm. for Freedom of the Press v. FBI*, 3 F.4th 350, 366 (2021) (cleaned up). "Purely factual material usually cannot be withheld under Exemption 5 unless it reflects an exercise of discretion and judgment calls." *Ancient Coin Collectors Guild v. U.S. Dep't of State*, 641 F.3d 504, 513 (D.C. Cir. 2011) (cleaned up). The Government may redact information under the deliberative process privilege only if "the selection or organization of facts is part of an agency's deliberative process." *Id. See also Project on Gov't Oversight, Inc. v. U.S. Dep't of Homeland Sec.*, 657 F. Supp. 3d 50, 62 (D.D.C. 2023) (the deliberative process privilege protects "culling or organization of an existing set of facts into a summary, not the initial finding of those facts."). The material the BOP redacted is quintessentially non-deliberative factual recitations.

Turning again to Ms. Ofume's Mortality Report, [ECF 10-4], the BOP redacted obviously factual information. Because Ms. Ofume died of a heart attack and was pronounced dead shortly after she reached the hospital,[2] there were no hospital complications, nor was there any pre-operative evaluation. So, there should be a "not applicable" checkmark after both "Was treatment appropriate to complication" and "Appropriate pre-operative evaluation completed,

---

[2] Plaintiff asks the Court to take judicial notice that Pickens County Medical Center, the Emergency Room where Ms. Ofume was treated [ECF 10-4, p.1], is about 16 miles from the prison.
https://maps.app.goo.gl/S8fVbRK3hyccVTtC9.

9

including lab, physical exam, updated history." Yet the answers are redacted. *Id*. at 4. Noting those questions are not applicable is a purely factual observation.

The same analysis holds true for check boxes that presumably are checked yes or no. These are purely factual answers. Yet responses to these questions have been withheld:

- Timeliness of diagnostic and treatment regimes;
- Were diagnostic procedures appropriate and timely;
- Was treatment appropriate to diagnosis and instituted timely;
- Was treatment appropriate to complication;
- Method of transportation to the hospital appropriate to patient condition;
- Was notification timely from the physician;
- Was notification timely from the physician assistant;
- Was notification timely from the Nurse practitioner;
- Was notification timely from the nurses;
- Was notification timely from the emergency medical techs;
- Was notification timely from the others;
- Was CPR administered; and
- Problems encountered during medical emergency, e.g., equipment, communications, transportation.

*Id*. at 4-5. The last redaction is especially noteworthy, as the text box for descriptions of any problems says "none," yet the BOP asserts that the check box answer itself would reveal some deliberative process.

The same patterns hold true for the other three exemplary Mortality Reports. On Ms. Nelson's Mortality Review, even though the revealed text states that "[p]atient refused preventative healthcare and diagnostic treatments," the answers to the questions whether diagnostic procedures were appropriate and timely and whether treatment was appropriate to the diagnosis and instituted timely are redacted. [ECF 10-5, p. 3]. What deliberation could be further revealed in the redacted check boxes? In fact, the BOP did release full narratives describing the course of Ms. Nelson's treatment. *Id.* at 10-16. During a non-emergent transport to a hospital in Birmingham, Alabama, she slumped over, and no pulse could be found. *Id.* at 12. Despite CPR and a re-route to a closer hospital, she died. *Id.* Yet the check boxes for questions such as whether the method of transportation was appropriate to the patient condition and whether the hospital completed an appropriate pre-operative evaluation are redacted. *Id.* at 4.

The trend continues in the next Mortality Review. On March 20, 2020, Ms. Andrea Circle-Bear entered the BOP with a high-risk pregnancy. [ECF 10-6, p.1]. She was shortly later hospitalized with COVID-19 and admitted to the ICU. *Id.* Despite those efforts, she died from complications of the COVID-19 infection. *Id.* Ms. Circle-Bear was one of the first victims of the pandemic, infected when there was very little information or available treatments. And still, the check boxes for questions such as whether the diagnostic procedures were appropriate and timely and whether her institutional treatment was appropriate to her condition are redacted. *Id.* at 3.

Ms. Sherry Salas's Mortality Report shows the same seemingly random redactions. [ECF10-7]. The narrative summary describes that while at a routine community-based rheumatology appointment, she had to be transported by ambulance to the local hospital. *Id.* at 2.

11

After consultation with a palliative care team, she chose to have a Do Not Resuscitate order. *Id*. She died the next day. *Id*. at 2-3. And yet, the answer to questions like whether the prison pre-operative evaluation was appropriate are redacted. *Id*. at 3.

These haphazard redactions of factual information required by policy to be collected are not supported by the deliberative process privilege. There was no selection process that culled important facts, here. BOP staff filled out forms with required information. These redactions cover purely factual information of the most basic sort. FOIA demands that the information be released.

II.  **To the extent any information is predecisional and deliberative, the BOP has not established any foreseeable harm emanating from its release.**

Lastly, if these Mortality Reviews are considered predecisional, then some of the redacted material might indicate more thoughtful reflection. Questions calling for narrative responses about strengths and weaknesses or lessons learned could theoretically contain recommendations for policy changes. Still, to withhold that information, FOIA requires that the Government establish a concrete, foreseeable harm that would stem from its release. FOIA Improvement Act § 2, 130 Stat. at 539 (codified at 5 U.S.C.S. § 552(a)(8)(A)(i)). This FOIA requirement was enacted because "Congress was particularly concerned with increasing agency overuse and abuse of Exemption 5 and the deliberative process privilege." *Reporters Comm. for Freedom of the Press v. FBI*, 3 F.4th 350, 369 (2021).

In requiring the Government to set out the connection between the potential release and some concrete, non-speculative harm that might come from it, the D.C. Circuit has emphasized that the Government must make a specific showing to carry its burden. "The significance of agency affidavits in a FOIA case cannot be underestimated." *Citizens for Responsibility & Ethics in Wash. v. U.S. Dep't of Just., 45* F.4th 963, 977 (D.C. Cir. 2022) (quoting King *v. U.S. Dep't of Just., 83*0 F.2d 210, 218 (D.C. Cir. 1987)). Affidavits must contain specificity, because a "requester's lack of knowledge seriously distorts the traditional adversary nature of our legal system's form of dispute resolution." *CREW*, *Id.* (quoting *Vaughn v. Rosen*, 484 F.2d 820, 824 (D.C. Cir. 1973)). Specificity helps somewhat correct that asymmetry of information, even where a requester cannot see the underlying records. *Id.*

Here, the proffered excuses do not carry the day for the BOP. The Government tendered the declaration of Ms. Kara Christenson, a Supervisory Government Information Specialist for the BOP. [ECF 10-2]. She states that the redacted material was withheld because:

> Specifically, release to the public would have a chilling effect on future communications of BOP staff performing Mortality Reviews as they would, at the very least, be less candid in their evaluations out of concern their opinions and analyses would be revealed to the public. At its worst, if the opinions and evaluations were disclosed to the public, vigorous evaluations of BOP health care would cease rendering this vital process virtually useless. BOP would not be able to identify strengths or weaknesses honestly and effectively and would not be able to improve its health care delivery system and policies, or take corrective action as needed, effectively.

*Id.* ¶ 24. This excuse is echoed in the *Vaughn* Index:

> [A number of] pages were withheld in part based on exemption (b)(5), which was used to withhold the deliberations, considerations and recommendations of staff when evaluating health care delivery systems and policies in an effort to identify strengths, weaknesses and corrective actions where necessary relative to an inmate death. Disclosure of this information would have a chilling effect on internal staff discussion and evaluation of

health care delivery systems rendering review cursory at best and prohibiting thoughtful analyses resulting in improved health at worst.

[ECF 10-3].

This sort of generic restatement of the purpose of the deliberative process privilege is not sufficient. The foreseeable harm requirement is not "a game of 'Mad Libs'" where the Government "fill[s] in the blanks with the name of the agency and the things that it does." *Nat'l Pub. Radio, Inc. v. U.S. Dep't of Homeland Sec.*, No. 1:20-cv-2468-RCL, 2022 U.S. Dist. LEXIS 176411, at *23 (D.D.C. Sept. 28, 2022). While the deliberative process privilege exists, "the Court must give meaning to the requirement, enacted by Congress after decades of evolving FOIA jurisprudence, that the agency articulate why *this* disclosure would be *particularly* harmful" *Id.* (emphasis in original). To do otherwise would be to "nullify the FOIA Improvement Act by allowing an agency to bypass its harm requirement." *Colo. Wild Pub. Lands v. U.S. Forest Serv.*, No. 21-cv-2802 (CRC), 2023 U.S. Dist. LEXIS 160540, at *26 (D.D.C. Sept. 11, 2023).

Here, these so-called "candid" and "vigorous evaluations" are nothing but a few lines in a standard form (itself rarely reviewed) which ask about basic strengths and weaknesses in medical care that preceded an incarcerated person's death. The BOP provides no real explanation why unnamed personnel might pull punches in filling out forms they are required to complete. The BOP's justification is essentially that its employees—sworn law enforcement officers and medical professionals—would not suggest improvements that could save lives if it meant perhaps publicly acknowledging a mistake or system weakness.

## Conclusion

For the above reasons, the Court should deny the Government's motion for summary judgment. Instead, the Court should grant summary judgment to the Plaintiff Reason Foundation and order release of all the withheld and redacted information contained in the Mortality Reviews.

Dated: February 22, 2023

Respectfully submitted,

    /s/ Deborah M. Golden
Deborah M. Golden, D.C. Bar #470578
The Law Office of Deborah M. Golden
700 Pennsylvania Ave. SE, 2nd Floor
Washington, D.C.  20003
Telephone: (202) 630-0332
dgolden@debgoldenlaw.com

*Counsel for Plaintiff Reason Foundation*